May it please the court, my name is Warren Harris, I represent the appellant KBR. I'll address two main points. This case involving claims by plaintiff soldiers for conduct occurring in the war in Iraq should have never been in court in Oregon, both because there's no personal jurisdiction and because the claims are preempted. First, this case should be dismissed because there's no personal jurisdiction over KBR in Oregon. The Supreme Court's decision in Walden v. Fiore is on point and is dispositive of this appeal. Second, this case should also be dismissed because the combatant activities exception to the Federal Tort Claims Act preempts claims like these that challenge work done in support of military operations. Under the Supreme Court's decision in Walden v. Fiore, there's no personal jurisdiction over KBR. Like the defendant in Walden, KBR's conduct occurred entirely outside of the forum state. So where is there jurisdiction over your claim? In Texas, Your Honor. Only in Texas? There possibly could be other places of general jurisdiction where alleged over KBR, but these guardsmen came home and several of them filed suits in their home state. I understand that. I'm trying to figure out where you're saying there is jurisdiction over your claim. Is that Texas? Is that a principal place of business? It's Texas. It is a principal place of business. And what's the state of incorporation? I'm not sure, Your Honor. I think it's Delaware. I believe it is Delaware. At least those two states. Would there be general jurisdiction in the state of incorporation after Nyland? I'm not positive, Your Honor. I have these cases that have been refiled against KBR in Texas. There may well be other places where they could be filed on the basis of general jurisdiction, but where they have been refiled is in Texas. If this suit were to be refiled in Texas, would there be a statute of limitations problem? No, Your Honor. There's a savings clause under both Oregon law and Texas law. So if the case was timely filed in Oregon, then it would be timely in Texas. There would be no statute. So there's no dispute on whether or not you've got a statute of limitations problem upon refiling in Texas? Not because of it being filed in Oregon. There was a statute of limitations issue raised in Oregon, and KBR lost on that point. That issue would still be alive in the case, but it would not be because of the case being filed in Oregon and then transferred or refiled in Texas. Was it timely filed in Texas? I'm sorry, Your Honor? Was it timely filed in Texas? This case was not filed in Texas. It was filed initially. No, no. Is there a question of statute of limitations in this filing in Texas? In the filing in Oregon, there was a question of statute of limitations. Is there one in Texas? The same statute of limitations issue that was raised in the court in Oregon would follow the case to Texas. There would not be any additional statute of limitations issue. It would revert back to the date the case was filed in Oregon. There's a savings clause both under Oregon law and under Texas law. So there would be no prejudice to the plaintiffs because of the case needing to be refiled in Texas. So let me ask you this slightly differently. If we were to agree with you that this case should have been dismissed for absence of jurisdiction and remanded it to the district court to do so with the suggestion that it transfer it to an appropriate district, you would not object to that? No, Your Honor. I believe that's in this court's discretion, and we actually asked Judge Papik to do that in the alternative. When we filed our 12B2 motion, we filed a motion to dismiss. In the alternative, we asked Judge Papik to transfer venue. We also asked him to certify the issue so that that could have been resolved early in the case, and we weren't able to get the trial court to certify it. But, in fact, you actually asked at some earlier point for a transfer under 1406. We did, Your Honor, yes. Okay. That was in the alternative in our 12B2 motion. Okay. There's been a request to do that. Walden applies squarely in this case. The Supreme Court in Walden looked at really two principles that are required in a due process that relate to personal jurisdiction. First is that the only contacts that can support jurisdiction are those created by the defendant itself, and the court made clear that a plaintiff's connection with the forum can't give rise to necessary contacts to have jurisdiction over a defendant. The second issue enunciated by the Supreme Court was that the jurisdictional analysis has to look to the defendant's contacts with the forum, not to the defendant's contacts with plaintiffs who reside in the forum. As the Supreme Court put it, the plaintiff can't be the only connection between the defendant and the forum. And under those principles, the trial court here lacked personal jurisdiction. In this case, the plaintiffs are the only link between KBR and the State of Oregon. KBR didn't create any contacts with Oregon. In fact, none of KBR's alleged conduct had anything to do with Oregon. That's because this is a challenge. You may be right on how we have to read Walden, but some of your contacts did have something to do with the State of Oregon. You've got a lot of people, according to the finding of the court, who were from Oregon, were injured in Iraq wrongfully, and are now back in Oregon, injured, and if they get no compensation from your client, may be on public welfare, may be under various forms of public assistance, and even if they are capable of full-time work in the way they would have been before, they are here injured. So there's clearly a connection. Whether it's jurisdictionally sufficient is another question. Yes, Your Honor, and we believe under Walden it's jurisdictionally irrelevant, because it would be the plaintiffs coming home and filling the effects of their injuries in Oregon, and that would be insufficient. KBR had to reach out and actually make contacts with Oregon, not with just plaintiffs that reside in Oregon. So if these people, and look, this is a hypothetical, so you don't need to tell me it's not the facts in this case, because they're strange facts, but let's assume that these people were on the border of the State of Washington on the way to cross into Oregon, and they had big signs on their back saying, going to Oregon. Then you ran into them with a car. Oregon jurisdiction. And that accident occurred in Oregon? In Washington. In Washington. Knowledge of the plaintiff's resident is insufficient to create jurisdiction. I believe that's the core of your question, Your Honor. If it is simply the fact that you have the accident with somebody in Washington, you know they're from Oregon, they come across the border, and you accidentally hit them in your car, that will not give rise to jurisdiction in Oregon. That was one of the precepts to the Supreme Court in Walden, is simply knowing that a plaintiff is from a forum is insufficient to create jurisdictional contacts with the forum. You have to actually have contacts with the forum itself, not with plaintiffs that happen to reside in the forum. Does it make a difference in this case that your contacts were with individuals who belonged to an Oregon institution? They were the Oregon National Guard. I don't believe it does, Your Honor. First, the due process analysis for personal jurisdiction is to protect the defendant. You put the defendant on notice, and the contacts and convenience of the plaintiff aren't relevant to that. So I think that's the first point to make. Second, the trial court here made a finding that it was a pure fortuity that the guardsmen that were providing force protection to KBR in Iraq were from Oregon. That finding is unchallenged on appeal. And in this case, there were soldiers from several jurisdictions that were providing force protection, and the military required KBR to have force protection. And there were guardsmen from West Virginia, from Oregon. There were even soldiers from the U.K. that were providing this force protection. KBR did not make a specific request for Oregon guardsmen. The Army made that decision. It was the Army's decision to require force protection. It was the Army's decision who to send for force protection. The trial court made that express finding. That finding hasn't been challenged on appeal. And the other point on that is, at the time these guardsmen— I'm going to expand a bit on the automobile accident. Suppose I'm a Washington guy, and you're Oregon, and I ask you to come to Washington to do something, and then I permit a charge. Because Oregon didn't have jurisdiction. That's getting much closer. It then becomes whether you're reaching out and reaching into Oregon to entice me. What, KBR is going to say, don't send me any Oregon people? I mean, how can they do that? It seems to me that the decision was made by the Department of Defense. It absolutely was, Your Honor. That's exactly right. The contract, the contract in the task order issue in this case, required KBR to have force protection. That was provided by the Army. So it's not my accident where I caused you to do it. It's far different than what actually happened in this case. Absolutely. 180 degrees. The other point that's very important to note here, at the time these guardsmen were serving in Iraq, they were serving as U.S. Army. They were federalized. National Guard doesn't go abroad and fight wars. They're called up by the Army and they are federalized. So although they were Army and they were national guardsmen, KBR was really dealing with them as U.S. Army. And we've given the sites of the court on that and our motion for summary reversal provided those to the court. But here we were dealing with federalized troops. So we really were dealing, in effect, with the Army at the time, even though they were national guardsmen. Judge Papik, in this case, really had two bases for his decision to find that there was personal jurisdiction. The first is he found that KBR knew that its conduct was directed at the guardsmen. But, again, as the Supreme Court held in Walden, simply knowing someone's residence is irrelevant. And, again, the trial court here found that the fact that these guardsmen were from Oregon is a fortuity. As we discussed earlier, several of these guardsmen came back home. They filed in their home jurisdiction. Those courts have dismissed those cases. Those cases have been refiled and are pending in Texas. The second issue by Judge Papik is he found that KBR knew that any injury sustained by the plaintiffs from the exposures in Iraq would follow them home to Oregon. That exact issue was also expressly rejected by the Supreme Court in Walden. Walden said in that case that the respondents would have experienced the same injury in California or Mississippi or wherever they happened to travel. Let me ask you this. Again, it's like Judge Hurwitz. I understand it's not the facts. It may be somewhat extreme. But I'm trying to understand Walden as it applies to this case, and maybe this will help me. Let's say that not your client but some other defendant maliciously puts into the gear, the clothing or the military equipment or something, radioactive uranium that will be harmful. No question about it, it's harmful. Knowing that it will be taken back home to Oregon. Sure enough, the uranium is not detected. It's taken back home. He puts it in his house, keeps it in his bedroom, and it turns out that the family is exposed to uranium as well as he is, and there is injury resulting therefrom. Is there any jurisdiction in Oregon? There might be. In that case, again, it's very different than here because you are actually seeking. Well, no, stay with my question for a minute, and then you can tell me why you think it's different. Because in your question that there might be because you actually have a harmful instrumentality you are seeking. And if you know the person is in Oregon, they're going to travel back and actually take that device, the uranium in your case, to Oregon with them. The question really for the jurisdictional analysis is whether that gives you a sufficient contact with Oregon. Simply knowing that the person is from Oregon under Walden probably isn't sufficient, just knowing that they're from Oregon. What if he shipped it to Oregon? I have shipping it, and you're shipping it in the guy's back. You know, if you know he's getting on a plane and going to Oregon. That's exactly what you know. He's from Oregon. He's going to go back to Oregon, and you put this harmful, this toxic uranium in his material in his gear. That very well may give rise to jurisdiction. The reason it's different than what happened here is we have alleged harmful exposures that occurred in Iraq. The key for the personal jurisdiction in this case was the alleged fraudulent statements that were made. That was the intentional tort that gave rise to jurisdiction. Of course, the jury ultimately found there was no fraud, but that was the act, so it isn't. But if you put, so your case is different. Let me try to bring it closer to your case and see. If you assume for a second that in Judge Fletcher's hypothetical, there would be Oregon jurisdiction, what if you put a harmful substance inside the person, and they bring it back to Oregon with them, and they suffer the damage here? It's their jurisdiction. I think that probably would not be, Your Honor, because that would be simply filling the effect of their injury, because if they travel to Oregon, or as the Supreme Court said, to California, Mississippi, wherever they travel, that's where they're going to fill the effect of the injury. And under the Calder effects test, it's not simply the fact that the plaintiff goes home and fills the effect of the injury, but there has to be a connection between the defendant and the forum related to the injury. And the Supreme Court was very clear about that in Calder. It's not, in Walden interpreting Calder, it's not just going home and filling the effect of the injury in some state, but there still has to be a connection with the injury, with the injury and the defendant in the forum state. And that's what would be lacking in the hypothetical that you gave, because it wouldn't matter what state they went to. You hadn't directed your activities towards the state. Absolutely, Your Honor. And that's been very clear under the Walder report. We're both working on final exam questions here. And for example, Walden clearly lays out the analysis here. There's another decision out of this court, the Schwarzenegger case, that I think also had the exact right focus in applying the Calder effects test. I'm sorry, Your Honor. No, Your Honor, I think that case made the exact right analysis, because there the issue was, did Fred Martin Motors have any connections with California? And the court said that no, it knew that Mr. Schwarzenegger happened to be in California. It knew that. It knew that he would feel the effects of the injury in California, but that wasn't sufficient, because there was no connection between the defendant and the forum. There was no connection to California otherwise. And that's the same scenario we have in Walden. Here, all the conduct took place in Iraq. The alleged harmful exposure took place in Iraq. And simply having knowledge that the plaintiffs were from Oregon is insufficient to establish personal jurisdiction over KBR. How do you understand the mechanism by which the exposure injures these people? Is it exposure that then produces a high risk of disease that manifests later? Are all the manifestations of the exposure apparent still in Iraq? I mean, what's the mechanism here? Under the plaintiff's theory, whenever they were allegedly exposed to sodium bicarbonate, they suffered a genetic transformation. Their expert called it a genetic transformation injury, although it's really not an injury at all. And supposedly... You lodged on that point. Yes, Your Honor, we did. Judge Papik ruled that there was no evidence presented that the genetic transformation injury persisted after they left Karmad Ali. So even Judge Papik, looking at Carson's testimony, said that there is no evidence that there was any genetic transformation after they left Karmad Ali. And it's the same genetic transformation that fell further down the road, except the theory of the case. The theory of the case is that because of that genetic transformation, which may have been cured and may do nothing, but it puts them at a higher risk of cancer, and it's the fear of cancer that led to the emotional distress damages that were the damages in this case. I would like to reserve my remaining time for rebuttal and submit the remaining issues on the briefs. Okay, thank you. Marty, Your Honor, Stuart Esther for plaintiffs and appellees, along with Gabriel Hawkins. Let me get something straight in my own mind to begin with. It seems to me that your emphasis here is the fact that your clients are Oregon National Guard. Let me change the facts a little bit. Suppose your clients had been regular U.S. Army and had the exact same thing happen to them. One of your clients was born and raised in Oregon. He continued his domicile and his voting in Oregon. Could he come back and have jurisdiction here in Oregon? It would be a tougher case for us to argue that there would be jurisdiction, but it would still be not a case that I would concede there's no jurisdiction. But can I answer the court's question by going right to the Walden case? I'm interested in the answer to Judge Walter's question. He's from Oregon and he comes home and he suffers all the effects that you claim your clients have, but he's regular Army. Jurisdiction or no jurisdiction? It's either one side or the other. Well, there's all the facts. The answer to the question is dependent upon the full factual record. There's all the facts. If everything is identical otherwise to this record, then the answer would be yes, there would be jurisdiction in Oregon. This is the entire world of facts. Well, then there's not enough facts. That's the way hypotheticals work. Your client is somebody who belongs to the regular Army. He is assigned in the same way that the Oregon National Guardsmen were assigned to this place, and he suffers exactly the effects from exactly the same cause. That is in your case. Is there jurisdiction? Can he sue in Oregon? Probably not. Okay. And that's true even if he says to the KBR people on site, I'm looking forward to going back to Eugene after my days in the Army. That may very well be within Walden, and I'd like to explain why the facts of our case are not within Walden at this point. Are you placing huge emphasis on the fact that they are the National Guardsmen? I am placing emphasis on the fact that the harm that was perpetrated by KBR wasn't simply on individual guardsmen but was targeted to the Oregon National Guard, the Army Department of the State of Oregon. Is that a yes? Yes. I'm sorry, Your Honor. But your clients are suing as individuals. The Oregon National Guard hasn't brought this. The Oregon National Guard brought this suit, maybe. I'm still not sure. But your clients are suing as individuals. So why is it that their status as guardsmen makes any difference? And that's where I'd like to start with, Your Honor. And that's where I want to go to Walden because there's been lots of characterization of what the Walden opinion says, but there's been little reference to the specifics of Walden. And in Walden, the court was very careful to consider whether or not the harm that was suffered would be harm that was individually only to these particular plaintiffs who happened to be in Nevada. And the court said that simply because the DEA agent who swore out the false affidavit knew that the harm may be caused to individuals who happened to be in Nevada because they would be deprived of their money there wasn't enough because they may have traveled to California, to Mississippi, or any other state, and it was a mere fortuity that they suffered the harm in Nevada. And I'd like to read just a little bit from the court's opinion. They lived and they were in residence. It wasn't just that they happened to be going on vacation to Nevada or passing through the state. Fair enough. But Justice Thomas was very clear that he, and I'd like to, let me, one passage from the Walden opinion at page 1125. Respondents and only respondents lacked access to their funds in Nevada, not because anything independently occurred there, but because Nevada is where respondents chose to be at a time when they desired to use the funds seized by petitioners. Respondents would have experienced the same lack of access in California, Mississippi, or wherever else they might have traveled and found themselves. Stop there. Would your clients have suffered the same damage had they chosen not to return to Oregon but to live in California, New Jersey, Maine? Yes, but there's more, and that's why I'd like to go to Judge Papik's findings, and that's why it's significant that these were Oregon, that the tort was perpetrated on the Oregon National Guard and that these were Oregon National Guardsmen. Judge Papik made two express findings. As the trier of fact, at page 1125 of the excerpt and page 37 of the excerpt, where he specifically found that by intentionally putting Oregon National Guardsmen, persons whose health and safety directly impact Oregon's treasury as a matter of state law at risk of harm, defendants purposefully interjected themselves into this forum. Second. Stop there. Why is that different than harming somebody who's going back, wanted to go back to Nevada with a boatload of money, which would undoubtedly help the Nevada taxing scheme? Well, I don't know. The facts are because in Walden, the court was very careful to say it was because the harm was to these individuals who could travel anywhere and there was no independent connection with the state of Oregon. So you're claiming that the state of Oregon was harmed because its guardsmen were harmed? Yes. But it's not the state of Oregon that's suing. But that's the point of Walden, that the Walden court wasn't focused on the specific harm to the individual plaintiffs. It was focusing on the relationship between the defendant and the state. And if the defendant targets towards his conduct outside of the state. Why would that argument be just as valid as the hypothet I began this with? He's a sergeant about to take retirement from the Army, but he's always maintained Oregon. And he comes back to Oregon, and now Oregon's got to take care of him. Right? That's why I was reluctant to answer your question because I'm a fool. I was hoping for, you know, on the facts of our case, if exactly this Judge Popek's factual determinations existed, as to those individual plaintiffs, that would be the same. Or at least it would be closer to the same. And there might be jurisdiction there. And that's why I was reluctant to initially answer your question. And then jurisdiction of, I can go create my jurisdiction at any time. If what you're saying is true, then all I have to be is a burden on the state of Louisiana. So I've got jurisdiction in Louisiana. It's more than simply a burden on the state of Louisiana or wherever you happen to be. Because if you happen not to go back to Louisiana and go back and go to California, then there might be some public assistance agency that pays for your care in California. So that's not the point. Do you have jurisdiction in California? What's that? I'm sorry. Do you have jurisdiction in California? No. The point I'm trying to make is that under Judge Popek's findings, it wasn't specifically the fortuity that these individuals happened to be injured and went back to Oregon. It was the fact that Oregon itself, as a result of these individuals being guardsmen, employees of the state of Oregon. They weren't. They were employed by the Department of Defense. They were temporarily under the command of the Department of Defense while in Iraq. They were employed by the Department of Defense. But that did not alter the fact that at the time of this injury, they remained. It was foreseeable they would revert back to becoming under the care and treatment of the state of Oregon. And that's the unchallenged factual finding of Judge Popek. And I'd like to take a step back, too, and remind the Court, as the Court knows from its Gold Foods opinion, that the real issue here is the test for aiming is really a function of the purpose of this. I'm sorry, for purposes of the test, it's the more fundamental issue of whether a defendant's conduct and connection with the forum state as such that he should reasonably anticipate being held into court there. It doesn't really matter whether or not these individuals were temporarily assigned under the command of the federal government at the time they were in Iraq. The reality was it was a temporary reassignment. And ultimately, when KBR engaged in its tortious conduct, directed to the National Guard unit as itself, where it used the command structure of the National Guard under Judge Popek's findings to perpetuate their wrongful conduct up and down the chain of command. The issue is whether or not KBR can anticipate, when it engaged in that tortious conduct, that it would be sued in Oregon. That's ultimately the issue when you were talking about express aiming. And there's nothing in the Walden case itself, in the facts of those cases, that case which requires this Court to conclude that when KBR engaged in that conduct, it would be unfair, it could not anticipate that it would be sued in the state of Oregon. You know, that anticipate being hailed into the Court of, and so on, that language in Dole Foods you quoted correctly, but of course that's really quoted out of some of the Supreme Court cases, including, I think, Fulbright-Volkswagen and so on. But that's circular. I mean, anticipate being hailed into court in Oregon or somewhere else depends upon what the law is. So if the law is X, then I can anticipate that the law is X. They may have anticipated getting sued all over the country and being able to assert very good jurisdictional defenses to them. The real question here is that your targeting argument is an argument that says they targeted elements of the Oregon National Guard while they were overseas and under federal jurisdiction, right? That's your? Yes. And they should have anticipated that the state of Oregon would be hurt by these actions, correct? Correct. Doesn't the injury have to be an injury that occurs to the plaintiffs as a result of the action? In other words, when we analyze this for jurisdictional purposes, don't we analyze whether or not the conduct was aimed at the plaintiffs, not at someone else? Well, that's where it's not. Of course, the injury to the plaintiff is significant. Isn't it the only thing we measure? That's what I was trying to explain, and perhaps not successfully, why the Walden Court's emphasis on the fact that the injury occurred to only these individual plaintiffs, and that's the same focus that this Court had in its recent Peacock v. Weston case. It's whether or not the tortious conduct occurring out of state caused harm to these individual plaintiffs in the state, so it wasn't merely a fortuity that these plaintiffs happened to go back to the state and file a lawsuit against the defendant here, KBR, that it was something that KBR could reasonably anticipate being sued in Oregon because regardless of where these individual soldiers went after the war was over, and by the way, of course, it was clearly foreseeable that or could be anticipated that these individuals would go back to the state and file a lawsuit against the  And that's what we're trying to do here. We're trying to find where you think the Supreme Court has ever said that harm to somebody other than to plaintiffs is a fact that we consider for jurisdictional purposes when a defendant seeks to dismiss the plaintiff's claim. Because in the language that you say suggests that, but I'm asking, I think I know all the Supreme Court's jurisdictional cases, but maybe I don't. Has the Supreme Court ever found jurisdiction over a plaintiff, over a case by a plaintiff where there wouldn't have been jurisdiction where that plaintiff was the only party, but there would have been jurisdiction had some other unnamed party joined the suit? Well, the harm is really simply the reflection in this case of the targeting conduct towards the state of Oregon. It was conduct by KBR targeting the state of Oregon by using the military department to perpetuate a fraud on these individuals. If it was aware or could be or should have been aware that, in fact, that harm would cause the state of, would manifest itself in the state of Oregon. But that's not the harm you're complaining about. See, the harm to the state of Oregon is not the harm you're complaining about. The harm you're complaining about is the harm to your clients, right? That's the harm we're suing for in this case. Okay. And so I go back to my question. I think the answer is no. But so is there a case in which a non-party was harmed, the state of Oregon or somebody else, and jurisdiction was based on that, even though there would not have been jurisdiction based solely on the parties, on the harm to the party? I'm not aware of that case specifically. I'm just trying to make, I'm trying to reconcile how Walden, the Walden court's analysis of why, in fact, it was significant for the court to focus on the fact that the harm occurred only to these individual plaintiffs and not elsewhere. There was no other impact beyond the harm to these individual plaintiffs, and I'm trying to explain why, in fact, that is not the case here. And I would like to also focus the court on the fact that in Walden the court was very careful to endorse and not to overrule the Calder decision. And in footnote seven of Walden, the court specifically explained why even though in Calder the individual writer and the editor of the article who engaged in all of their tortious conduct in Florida and had no, and did not physically transmit the article into California, why, in fact, there could still be jurisdiction in California. And the court in Walden endorsing Calder said even though the defendants did not circulate the article themselves, they expressly aimed their intentional and allegedly tortious conduct at California because, one, they know the national inquiry had its largest circulation there, and, two, that the article would have a potentially devastating impact there. That's the Walden endorsing Calder. And I would submit that's precisely what we have here. Let me ask you a different hypothetical. Let's say I live in Oregon. I get a temporary job at Boeing, I've been in manufacturing airplanes, and I'm exposed wrongfully to toxic chemicals during my work at Boeing. I work there for six months. I come back here and I'm sick. Is there jurisdiction in Oregon over Boeing? Because you were injured working in Boeing? Probably not. So how does this case differ? Because, again, this was conduct that was targeted at an instrumentality of the state of Oregon knowing. So let me change it then so that I'm not working directly as an employee of Boeing but with an Oregon corporation that employs me. I go up and work at Boeing and I'm injured the way I just described. Does that change the result? Probably not. But that, again, is different from what we have here. Okay, let me change it again. So this time I am on a work project. I'm 20 years old. I'm in rehab from some drug addiction. I'm in an Oregon program and they're paying me benefits, and they detail me to Boeing so that I can kind of get some work experience. I work up in Boeing and, for three months, I come back and I'm injured and I'm now suffering the consequences of my toxic exposure. Jurisdiction in Oregon? It's probably, you know, that would probably be not under Walden. And here's the hypothetical. I want to keep you on these because they're helpful to us. Let's assume that Washington says, I've got a problem with Boeing. There's bad, you know, there's bad gas in the air and we don't have the expert, but he's in Oregon, and they ask the Oregon Department of Health Services to send somebody up there. And he suffers the result when he's there. The state of Washington, Boeing doesn't ask him to come up there. Jurisdiction in Oregon? I didn't really follow that. Well, I think it's your case. That's why I'm asking. So the state of Washington has a problem, has an environmental problem at Boeing, and it wants to investigate it. And it says we don't have anybody, but there's a guy in the Oregon Department that's terrific, and they send him up there. And Boeing knows he's from the Oregon Department, and he suffers problems when he's up there. Boeing hasn't done anything to request a guy from Oregon. He just shows up there. Jurisdiction in Oregon? Yes, that's probably jurisdiction. I mean, if they reached into and specifically. Well, Boeing didn't reach into anywhere. See, that's the same problem as last year. KBR didn't reach into anywhere to say. KBR had said, Governor, please send the National Guard to our site. That would be different. But that's, again, I'm glad the court asked this question because, in fact, that's exactly what KBR did. So if that's a significant fact, that's why the court should affirm. No, KBR reached into Oregon in some way. Even if it requested inside of Iraq that an Oregon unit be assigned, that's quite different than calling up the governor of Oregon and saying, please have your units in here because they're the best at it. They reached into Oregon in my second case. In the first case, they did not. Well, in this case, you know, and I just want to respond to the fortuity issue as to why, in fact, that's a storm. And, in fact, Judge Papik's initial ruling regarding fortuity was simply on the initial use of the Oregon National Guard troops. Judge Papik specifically found that after that, knowing that these were Oregon National Guard troops, KBR perpetuated its fraud through the Oregon National Guard troops and the command structure. If they'd asked for 101st Airborne, would there be jurisdiction in North Carolina? Not an instrumentality of the state of North Carolina. Not the Department of Defense of the state of North Carolina. This is, in fact, the Department of Defense of the state of Oregon that KBR was using in causing injury. And then knowing that it would ultimately cause pervasive harm in the state of Oregon, not only through these soldiers returning, but through Oregon's responsibility for these guard troops. I'm not sure if you're on this, but I'm curious. Could KBR have refused? I don't want any Oregon people because I don't want to be sued in Oregon. Oregon's a very liberal state. So don't send me any Oregon people. Could they have done that? I don't know if that's in the record, Your Honor, whether or not there was other troops available. But the reality is, knowing that, in fact, these were Oregon National Guard troops, KBR used the command structure to perpetuate its tortious conduct. So I don't know. Do you think KBR could have said to the Department of Defense, I don't want any National Guard. I just want professionals. Do you think they could have said that? As a practical matter, I don't know that it would have been in a position to say that. But is that necessarily dispositive of whether jurisdiction of? Maybe not. I'm just trying to satisfy my own curiosity. Before we let your time run entirely, let me end with some questions, or at least ask some questions, with which I began with your adversary, and that is with respect to statute of limitations. Is there no question but what if you refile in Texas that there will be not a statute of limitations problem? Would there be a difference compared to a 1406 transfer, in this case, to the state of Texas? Help me out with a statute of limitations problem that you may or may not encounter. I don't know that there's going to be a statute of limitations problem. In this case, KBR has represented to the court that it will not assert a statute of limitations. Well, it didn't quite say that. It said that there's a question about how the Oregon statute of limitations would apply, which was decided here adversely to KBR. And it said that question would remain, but it would not be a problem, I guess, because of the new filing, but that question would be open. Yes, I think what they represented was they would treat the filing date as your filing date in Oregon. Yes. Is that your understanding also? My understanding of KBR's position is yes, that's my understanding of KBR's position on that, based on what was just said. Okay, thank you very much. Thank you. Thank you. I would like to address two points. First, dealing with Oregon's interest. The Supreme Court made clear in Walden that plaintiff's ties to Oregon can't be the focus because due process limits on jurisdiction protect the right to defend it, not the plaintiff. And that's on page 1122 in Walden. It's also important to note here, because the guardsmen were federalized and they were serving as Army, they received Army benefits. They received VA benefits in this case. And the statutory site for the federalization of the National Guard is 10 U.S.C. section 12406. So they were serving as U.S. Army and have U.S. Army benefits. The second point I would like to address deals with the targeting, the alleged targeting in this case. And that's simply wrong factually. The statement I heard from plaintiffs was it wasn't merely a fortuity that plaintiffs came back to Oregon. Well, that is exactly contrary to the fact finding made by the trial court here. Paul, that's not right. It was a fortuity that they showed up as Oregon people in Iraq. It was not a fortuity they went back to Oregon because that was where they were from. You're correct, Your Honor. I say I'm correct. It was a fortuity that they showed that it was Oregon National Guardsmen that appeared and the trial court made an express finding, and this is on page 312 of the ER, that it was a fortuity that the guardsmen who responded to KBR's request came from Oregon. And that finding is unchallenged on appeal. Walden is crystal clear. The next to last sentence of Walden, I think, really sums this case up. Petitioner's relevant conduct occurred entirely in Georgia. And the mere fact that his conduct affected plaintiffs with connections to the foreign state does not suffice to authorize jurisdiction. In this case, if you replace Georgia with Iraq, I believe Walden is exactly on point with the analysis. And there is no personal jurisdiction over KBR. This case should not have been in court and certainly not in court in Oregon. Thank you very much. Thank both sides for good arguments. In the case of Rocky Bixby v. KBR,
judges: Walter, Fletcher, Hurwitz